UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
THE BETTER ANGELS SOCIETY, INC.,        :        19cv3285 (DLC)
                                        :
                        Plaintiff,      :        OPINION AND ORDER
                                        :
            -v-                         :
                                        :
INSTITUTE FOR AMERICAN VALUES, INC.     :
d/b/a BETTER ANGELS,                    :
                        Defendants.     :
                                        :
---------------------------------------X

APPEARANCES:

For plaintiff:
Jay S. Bowen
Lauren Spahn
Shackelford, Bowen, McKinley & Norton, LLP
47 Music Square East
Nashville, TN 37203
(615) 329-4440

For defendant:
James Nealon
Steven J. Moore
Withers Bergman LLP
430 Park Ave.
New York, NY  10022
(212) 848-9800

DENISE COTE, District Judge:

     The Better Angels Society, Inc. ("Better Angels") has

brought this motion for partial summary judgment on its

trademark infringement claim against Institute for American

Values, Inc. d/b/a Better Angels ("IAV").  For the reasons that

follow, Better Angels's motion is granted.

## Background

The following facts are undisputed or taken in the light most favorable to IAV, the non-moving party, unless otherwise noted.[1]  Better Angels was founded in 2011 as a Delaware non-profit corporation with its principal place of business in Washington D.C.  On November 8, 2011, the trademark to the word mark "The Better Angels Society" (the "Better Angels Mark") was registered with the U.S. Patent and Trademark Office (the "PTO") by American Documentaries, Inc., which assigned the mark to Better Angels on May 15, 2012.  In the trademark registration, it notes that the goods and services associated with "The Better Angels Society" are, "[c]haritable fundraising services in connection with media- and entertainment-related projects."

Better Angels is affiliated with the documentary filmmaker Ken Burns ("Burns").  Better Angels funds historical documentary films by Burns and other filmmakers, and works to ensure that these films are broadcast, promoted, and preserved for

---

[1] In opposing Better Angels's motion for partial summary judgment, IAV has argued that Better Angels's motion should be denied because certain declarations submitted by Better Angels violate Rule 56(c)(4), Fed. R. Civ. P., which requires that declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Both parties have submitted declarations replete with legal arguments, conclusory allegations, and statements that are not based on personal knowledge.  All such statements, by both parties, have been ignored in deciding this motion.

widespread audiences.  In relevant part, the "About Us" section

of Better Angels's website states:

> Our mission is to educate, engage and provoke
> thoughtful discussion among people of every political
> persuasion and ideology.  We work to ensure
> historically significant films are completed,
> broadcast, promoted, and shared in ways that reach and
> inform as many people as possible through robust
> educational and civic outreach. . . .

> We are also working to ensure that the next generation
> of documentary filmmakers, inspired by Ken Burns and
> his team, receive the education, mentoring, training,
> and support they need to continue his legacy.

To promote the documentary films that it funds, Better

Angels hosts events with organizations and universities.[2]  On

September 12, 2017, Better Angels hosted an event in Washington

D.C. with the Wilson Center to preview Burns's documentary film

The Vietnam War.  The event was advertised as including a

conversation on "Foreign Policy and the Legacy of Vietnam."  On

March 11, 2019, Better Angels hosted an event in Washington D.C.

with Georgetown University to promote Lynn Novick's documentary

film College Behind Bars.  The event was advertised as a

discussion on "criminal justice reform, the power of the

humanities, and the role documentary filmmaking can play in

formal higher education settings."

---

[2] IAV disputes the extent of Better Angels's involvement in
certain programming that it has provided with organizations and
universities.  IAV has not cited any evidence to support its
ground for dispute, so this fact is treated as undisputed.  Fed.
R. Civ. P. 56(e)(2).

Better Angels also provides funding for a digital platform called UNUM.[3]  Planning for UNUM began in 2015, and the platform went live in October 2017.  According to its website, UNUM is

> designed to provide historical context to today's issues and spark conversation.  UNUM is inspired by the original motto of the United States, e pluribus unum -- out of many, one. . . . UNUM . . . serve[s] as a free, easily accessibly resource for educators and their students, providing a seamless connection between the historical events covered in the films and the conversations we as a country are having today.

Better Angels refers to its donors as "Better Angels." Better Angels fundraising material, which prominently displays the Better Angels Mark, provides that donors who give over $100,000 are "Better Angels" and donors who give less than that amount are "Friends of the Better Angels."  Donors may contribute and join Better Angels directly through Better Angels's website.  Since its inception, Better Angels has raised over $82 million.[4]  Of this amount, $3 million was raised to support UNUM specifically.  Better Angels considers some of its donors to be "major donors."  Other donors, however, give

---

[3] Although IAV disputes Better Angels's involvement in UNUM, the declarations opposing Better Angels's motion for partial summary judgment acknowledge that Better Angels provides funding to UNUM.  This fact is treated as undisputed.  Fed. R. Civ. P. 56(e)(2).

[4] IAV disputes that Better Angels has raised $82 million since its inception.  IAV does not provide any evidence to suggest that this fact is genuinely in dispute.  This fact is therefore treated as undisputed.  Fed. R. Civ. P. 56(e)(2).

amounts less than $1,000.  Between August 2016 and August 2019,
approximately 110 individuals donated amounts under $1,000 to
Better Angels.  Better Angels estimates that it has spent
$435,000 in direct costs relating to marketing efforts since its
founding.[5]

IAV was founded in 1987.  It is a Delaware non-profit
organization with its principal place of business in New York
City.  According to its founder, IAV's mission is the "studying
and strengthening [of] civil society."  From 1987 through 2015,
IAV hosted public seminars and workshops on civil society
topics, partnered with leaders and groups to promote
depolarizing public conversation, and produced a range of civil
society-themed products and services.

In late 2016, IAV began an initiative that it labelled
"Better Angels."  Today, this is IAV's only initiative.
According to IAV's website, under the heading "How We Started,"
the initiative began a "couple days after the 2016 election,"
when IAV's founder decided to bring together "a handful of Trump
supporters and Clinton supporters" in what became the first
"Red/Blue Workshop."  Since then, IAV has continued in its
mission to bring together conservatives and liberals on a grass

---

[5] In Better Angels's Rule 56.1 statement, Better Angels reports
spending $2 million in marketing since its inception.  The
evidence cited by Better Angels indicates that it has spent
$435,000 in marketing costs since its inception.

roots basis to participate in structured programming to reduce
prejudice.

Some of the programming offered by IAV includes the
screening of documentary films.  On May 15, 2019, IAV hosted a
screening of the film <u>Better Angels: Reuniting America</u> in
Sacramento, California.[6]  Other programming includes "Skills
Workshops," "Red/Blue Workshops," and debates.  These events
were held throughout the Washington D.C. area from March through
May of 2019.

IAV has annual membership dues of $12.  Prospective members
may join IAV through the organization's website.  As of August
2019, IAV had enrolled over 7,736 dues-paying members.  Since
2016, IAV has spent $27,891 on Facebook ads for prospective
members and program participants.

On September 11, 2018, IAV filed two trademark applications
for the word mark "Better Angels" (the "IAV Mark").  On January
29, 2019, the PTO published IAV's first application on its
website.  On January 30, Better Angels filed a new trademark
application for "The Better Angels Society," and, on February 6,
filed an objection to IAV's first application.  On March 5, the
PTO published a notice of IAV's second application, to which

---

[6] IAV denies that it hosted this event.  The evidence it cites to
dispute this statement, however, makes clear that IAV hosted the
event and disputes only that the film shown at the event is
similar to the types of films funded by Better Angels.

Better Angels objected on March 7.  On May 24, the PTO issued a
Suspension Notice to Better Angels informing Better Angels that
the PTO would further examine Better Angels's January 30
application because it was filed after IAV's September 11, 2018
applications.

Prior to filing its new trademark application and opposing
the registration of the IAV Mark, Better Angels filed the
instant action on December 6, 2018.  Better Angels alleges
claims of trademark infringement, trademark dilution, false
designation of origin, unfair competition, and deceptive trade
practices under the Virginia Consumer Protection Act.  Better
Angels seeks declaratory and injunctive relief, treble damages,
costs, and attorneys' fees.

On June 18, 2019, Better Angels moved for partial summary
judgment on its trademark infringement claim.  In opposing the
motion on September 6, IAV requested additional discovery
pursuant to Rule 56(d), Fed. R. Civ. P.  The motion for partial
summary judgment became fully submitted on October 18.  For the
reasons that follow, Better Angels's motion for partial summary
judgment on its trademark infringement claim is granted.

## Discussion

Summary judgment may not be granted unless all of the
submissions taken together "show[ ] that there is no genuine
dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Summary judgment is appropriate when the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party." Smith v. Cty. of Suffolk, 776 F.3d 114, 121
(2d Cir. 2015) (citation omitted). The moving party bears the
burden of demonstrating the absence of a material factual
question, and in making this determination, the court must view
all facts in the light most favorable to the non-moving
party. See Eastman Kodak Co. v. Image Techn. Servs., Inc., 504
U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48
(2d Cir. 2015).

Once the moving party has asserted facts showing that the
non-movant's claims cannot be sustained, "the party opposing
summary judgment may not merely rest on the allegations or
denials of his pleading; rather his response, by affidavits or
otherwise as provided in the Rule, must set forth specific facts
demonstrating that there is a genuine issue for trial." Wright
v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted).
"[C]onclusory statements, conjecture, and inadmissible evidence
are insufficient to defeat summary judgment," Ridinger v. Dow
Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation
omitted), as is "mere speculation or conjecture as to the true
nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d
Cir. 2010) (citation omitted). Only disputes over material

facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

## I. Trademark Infringement

A familiar two-prong test is used to analyze a claim for trademark infringement. Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004). "The test . . . looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co., 897 F.3d 413, 417 (2d Cir. 2018) (citation omitted).

The registration of a trademark is "prima facie evidence of the validity of the registered mark . . . ." 15 U.S.C. § 1115(a); Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999). Better Angels has registered the Better Angels Mark and thus it is entitled to a presumption of validity. IAV does not contest the validity of the Better Angels Mark.

The only remaining issue with respect to the Mark is the likelihood of confusion. To determine whether there is a

likelihood of confusion between two marks, courts in this

Circuit refer to the eight familiar Polaroid factors.  These

factors are:

> [1] the strength of the senior user's mark; [2] the
> similarity of the parties' marks; [3] the proximity of
> the parties' areas of commerce; [4] the likelihood
> that the senior user will bridge the gap separating
> their areas of activity; [5] the existence of actual
> consumer confusion; [6] whether the junior user acted
> in bad faith or was otherwise reprehensible in
> adopting the mark; [7] the quality of the junior
> user's product; and [8] the sophistication of the
> relevant consumer group.

Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 37

(2d Cir. 2016) (citing Polaroid Corp. v. Polarad Elecs. Corp.,

287 F.2d 492, 495 (2d Cir. 1961)) (other citations omitted).

"The application of the Polaroid test is not mechanical,

but rather, focuses on the ultimate question of whether, looking

at the products in their totality, consumers are likely to be

confused."  Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588

F.3d 97, 115 (2d Cir. 2009) (citation omitted).  "The pertinence

of individual factors varies with the facts of the particular

case.  Courts should not treat any one factor as dispositive,

nor apply a mechanical process awarding judgment to the party

with the greatest number of factors weighing in its

favor."  Guthrie Healthcare Sys., 826 F.3d at 37 (citation

omitted).  A discussion of each Polaroid factor follows.

## A. Strength of the mark

Better Angels contends that its mark "The Better Angels Society" is "strong." In trademark law, the "strength" of a mark is determined by "its tendency to uniquely identify the source of the product." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005). To determine the strength of a mark, courts consider the mark's "distinctiveness in the marketplace," as well as the mark's "inherent distinctiveness." Time, Inc. v. Petersen Pub. Co., 173 F.3d 113, 118 (2d Cir. 1999). "Marks are classified, in ascending order of strength as (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful." Star Indus., 412 F.3d at 384-85 (citation omitted). Arbitrary or fanciful marks have "no logical relationship" to the product or service for which they are used. Guthrie Healthcare Sys., 826 F.3d at 41. Suggestive marks "communicate something about the product to which they relate, but by suggestion rather than description." Id. Descriptive marks are entitled to protection only if they have acquired a "secondary meaning" by becoming "distinctive of the applicant's goods in commerce." Id. (citation omitted). Secondary meaning may be measured by advertising costs, breadth of sales, and revenue. See Savin Corp., 391 F.3d at 457. Generic marks are "understood as referring to the genus of which the particular product is a species" and are entitled to no trademark

protection at all.  Guthrie Healthcare Sys., 826 F.3d at 41
(citation omitted).

A "conclusive presumption of distinctiveness" is afforded
to registered marks that have been in continuous use for five
years subsequent to their registration and that are still in
use, known as "incontestable marks."  Savin Corp., 391 F.3d at
457; see also 15 U.S.C. § 1065; Gruner + Jahr USA Pub. v.
Meredith Corp., 991 F.2d 1072, 1076 (2d Cir. 1993).  This
"presumption of an exclusive right to use the mark," however,
"extends only so far as the goods or services noted in the
registration certificate."  Savin Corp., 391 F.3d at 457.

The Better Angels Mark is incontestable with respect to the
goods and services noted in the registration certificate:
"[c]haritable fundraising services in connection with media- and
entertainment-related projects."  IAV does not contest the
strength of the Better Angels Mark in connection with these
services.

Beyond the class of services identified in its registration
certificate, the Better Angels Mark has strength with respect to
civil-discourse-oriented non-profit, charitable, and educational
services that Better Angels provides and funds.  With respect to
inherent strength, the name "The Better Angels Society" is
suggestive of the services provided and funded by Better Angels.
As the phrase "better angels" was used in President Abraham

Lincoln's 1861 inaugural address, the name suggests that Better Angels has a historical focus. The words also communicate that the organization has a philanthropic or civic mission. Further entitling Better Angels to protection in this area, Better Angels has shown that its Mark possesses secondary meaning in this market. Since its inception, Better Angels has raised over $82 million. To fund UNUM specifically, Better Angels has received $3 million. Since its founding, Better Angels estimates that it has spent $435,000 in direct costs relating to marketing efforts. The Better Angels Mark is prominently displayed on the documentaries that it funds, in advertisements for the panel discussions it hosts, and with the online services it supports. The strength of the Better Angels Mark weighs in favor of finding trademark infringement.

IAV's arguments to the contrary fail. First, IAV argues that, with respect to the goods and services beyond what is listed in the trademark registration, the Better Angels Mark is generic because it is a reference to President Lincoln's inaugural address. But, a mark is not generic simply because it has some point of reference. The reference must be to the "genus of which the particular product is a species." Guthrie Healthcare Sys., 826 F.3d at 41 (citation omitted).

IAV next argues that Better Angels has not provided any evidence that it is the only organization in its marketplace

that has used the Better Angels Mark since 2011.[7]  The law does not require affirmative evidence of exclusive use to find that a mark has a "sufficient degree of originality and distinctiveness to increase the likelihood of confusion and to avoid the circumstance in which grant of relief would unfairly reserve to one party adjectival terms to which all entities working in the area of commerce ought to have access."  Guthrie Healthcare Sys., 826 F.3d at 43.

Finally, IAV argues that the strength of the Better Angels Mark is not relevant because Better Angels is "simply a fundraiser, and has no branded goods or services."  This argument fails for two reasons.  First, Better Angels brands the documentaries that it funds, the panel discussions it hosts, and the online services it supports, with the Better Angels Mark. Second, by arguing that Better Angels provides no "goods and services" because it engages in fundraising, IAV implies that a fundraising organization is never entitled to protection from trademark infringement.  IAV cites no law to support this proposition.

---

[7] Although Better Angels argues that it has used the Better Angels Mark "exclusively," the declarations it cites to support this argument do not attest to Better Angels's exclusive use of the Better Angels Mark.

**B. Similarity of the mark**

Better Angels argues that the parties' marks are similar. "Of salient importance among the Polaroid factors is the 'similarity of the marks' test, which attempts to discern whether the similarity of the marks is likely to cause confusion among potential customers." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005) (citation omitted). Nonetheless, "[e]ven close similarity between two marks is not dispositive of the issue of likelihood of confusion." Savin Corp., 391 F.3d at 458.

Here, IAV does not contest the similarity of the IAV Mark "Better Angels" with the Better Angels Mark "The Better Angels Society." There is no doubt that the marks are similar. This factor weighs in favor of Better Angels.

**C. Commercial proximity**

Better Angels argues that the parties operate in similar, or proximate, areas of commerce. Commercial proximity "can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." Guthrie Healthcare Sys., 826 F.3d at 39. Proximity matters because "the public is less likely to draw an inference of relatedness from similar marks when the marks' users are in dissimilar areas of commerce, or, depending on circumstances, are involved in localized commerce in geographic areas widely

distant from one another." Id. In considering commercial proximity, it is also appropriate to consider how "the respective products are marketed" and made available to consumers. Star Indus., 412 F.3d at 387.

Better Angels and IAV are non-profit organizations dedicated to fostering civil society. They offer educational services, workshops, and film screenings that promote civic discourse. The parties' programming has been offered at similar times in similar places. Both Better Angels and IAV hosted events addressing current-day, civic issues that occurred in the Washington D.C. area in the spring of 2019. Further, Better Angels's UNUM digital platform promotes similar ideals to that of IAV. UNUM's stated purpose is to "provide historical context to today's issues and spark conversation." Its name is inspired by the motto "e pluribus unum -- out of many, one." Likewise, IAV is committed to providing programming focused on uniting individuals on the political left and right.

Additionally, both Better Angels and IAV use their webpages to promote their outreach and programming services, and as platforms upon which to accept donations. Their websites have similar domain names. The domain name of Better Angels is: https://www.thebetterangelssociety.org/. IAV's domain name is: https://www.better-angels.org/. A user search for "Better Angels" generates both websites. Thus, the areas in which the

16

parties operate are similar enough that the proximity factor weighs in favor of Better Angels.

IAV argues that Better Angels's sole purpose is to engage in charitable fundraising to facilitate the creation, production, and distribution of "high quality historically oriented documentary films" for Burns and other "closely aligned" filmmakers.[8]  This argument describes Better Angels in such narrow terms that it obscures the myriad similarities between the two organizations.  Viewed from the consumer's perspective, both parties are civic-discourse-oriented non-profit organizations that provide programming throughout the United States, and in the Washington D.C. area in particular.

### D. Bridging the Gap

Better Angels argues that even if Better Angels and IAV do not operate currently in the same field, there is a likelihood that it will expand into "other areas of commerce so that the likelihood of confusion will increase," under the "bridging the gap" Polaroid factor.  Guthrie Healthcare Sys., 826 F.3d at 45. A "senior user of a[] mark is the entitled user and should not

---

[8] In its opposition brief, IAV refers the Court to its "declarations and supporting exhibits" for its arguments disputing Better Angels's allegations concerning the proximity of services offered by the parties.  Pursuant to Fed. R. Civ. P. 56(c)(4), the legal arguments and conclusory allegations contained in the declarations and exhibits submitted by the parties have been ignored.

be confined within the present scope of its commerce by the risk of confusion that will result from a reasonably plausible expansion of its business." Id.

The evidence presented by Better Angels, namely its digital platform UNUM, makes clear that Better Angels's business could expand further to an area of commerce similar to that of IAV. The "bridging the gap" factor weighs heavily in favor of Better Angels. IAV makes no argument to the contrary.

**E. Actual consumer confusion**

Better Angels argues that there have been instances of actual consumer confusion between the two parties. "Instances of actual confusion resulting from a junior user's use of a mark similar to a senior user's can be powerful evidence supporting a likelihood of confusion." Id. at 44. But, "[a] single anecdote of confusion over the entire course of competition . . . constitutes de minimis evidence insufficient to raise triable issues." Savin Corp., 391 F.3d at 459. Additionally, "the absence of evidence of actual confusion does not necessarily prove anything, especially when there has been neither long nor significant experience of the two trademarks operating side-by-side in the same market." Guthrie Healthcare Sys., 826 F.3d at 44. It is "black letter law that actual confusion need not be shown to prevail" on a claim of trademark infringement. Id. at 45 (citation omitted).

The evidence that Better Angels presents of actual consumer confusion has been challenged as hearsay and otherwise unreliable by IAV.  Rather than resolve this evidentiary dispute, this factor is afforded no weight given the few instances of actual confusion cited by Better Angels and the strength of the other factors demonstrating a likelihood of consumer confusion.

### F. Bad faith

Better Angels contends that IAV uses the IAV Mark in bad faith.  "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Star Indus., 412 F.3d at 388.  "The most likely relevance of bad faith on the part of a junior user in choosing a mark similar to a senior user's bears primarily on the appropriate remedy for the junior user's infringement.  Bad faith is not an essential element of a claim of infringement." Guthrie Healthcare Sys., 826 F.3d at 44.

Better Angels has not demonstrated that IAV adopted its mark in bad faith.  Better Angels argues that bad faith can be inferred because IAV has not discontinued its use of the IAV Mark after "repeated warnings" from Better Angels.  But, Better Angels does not argue, or present evidence indicating, that IAV

adopted its Mark to exploit Better Angels's good will or sow confusion between the two organizations.  This factor weighs in favor of IAV.

### G. Quality

Better Angels argues that the quality of IAV's services risks "diluting and tarnishing" Better Angels.[9]  Differences in the relative quality between a senior user's and a junior user's merchandise can affect "the potential for harm to the senior user's reputation."  Id.  There is no evidence in the record to suggest IAV's services risk hurting Better Angels's reputation. This factor weighs in favor of IAV.

Better Angels's arguments to the contrary are not persuasive.  Better Angels first argues that IAV's services are inferior because its workshops are not conducted by "skilled facilitators."  Better Angels further argues that IAV workshops may result in "insulting or offensive remarks" or "physical or violent behavior" because IAV brings together people with

_____

[9] Better Angels does not argue that the relative quality of IAV and Better Angels's services are likely to cause confusion. Where a junior user's goods or services are inferior to those of a senior user, this tends to reduce the likelihood of consumer confusion because "buyers will be less likely to assume that the senior user whose products is high-quality will have produced the lesser-quality products of the junior user."  Savin Corp., 391 F.3d at 461.  Better Angels only argues that IAV's inferior quality services will harm Better Angels's reputation.

20

disparate political viewpoints.  These allegations are entirely speculative and are not supported by any evidence in the record.

Better Angels also argues that IAV may dilute Better Angels's brand because a "significant portion" of IAV's fundraising revenues "go directly to one individual or family" in compensation.  But, Better Angels provides no evidence demonstrating that this portion of revenue is significant relative to other non-profit organizations with similar total revenue to IAV.  Better Angels has failed to establish that the quality of IAV's services risks harming Better Angels's reputation.

**H. Consumer sophistication**

Better Angels argues that consumer sophistication weighs in its favor.  Consumer sophistication can have a "significant bearing on likelihood of confusion."  Guthrie Healthcare Sys., 826 F.3d at 43.  "[T]he more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace."  Savin Corp., 391 F.3d at 461.  As a general matter, "[t]he greater the value of an article the more careful the typical consumer can be expected to be."  McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1137 (2d Cir. 1979).

Better Angels presents evidence that it has raised amounts less than $1,000 from 110 individual donors over three years.

Better Angels also reports that it raises about $10 million each year, or roughly $30 million over three years.  Donations that exceed $1,000 thus comprise the vast majority of Better Angels's fundraising in the past three years.  An individual who donates over $1,000 to a non-profit organization is likely to make a deliberate, careful decision to do so.  This factor weighs in favor of IAV.[10]

### I. Balancing the factors

Of the eight <u>Polaroid</u> factors, four favor Better Angels: strength of the mark, similarity of the marks, commercial proximity, and bridging the gap.  Two factors have not affected the determination of whether there is a likelihood of consumer confusion: actual confusion and quality of the services.

In balancing the factors from the <u>Polaroid</u> test, the ultimate inquiry is whether a consumer would likely be confused by the junior's user use of the allegedly infringing mark. <u>Guthrie Healthcare Sys.</u>, 826 F.3d at 37.  Here, that is so.  A single example demonstrates how easily this may occur.  A consumer watching a documentary on PBS may see "The Better Angels Society" mark in the film's credits.  Upon running an

---

[10] Better Angels argues that a prospective donor "cannot determine the amount donated by other members and would have no perception of its status among other donors."  But, how a potential consumer might perceive his or her peer is not relevant to the consumer sophistication inquiry.

online search for the organization, the consumer would come across IAV's website, https://www.better-angels.org/, promoting itself as an organization devoted to civic society and political depolarization. This consumer may assume, not unreasonably, that this Better Angels organization is the same or related to The Better Angels Society it saw on PBS, and, perhaps, even donate to the organization on this basis. This is the type of consumer confusion that the trademark law seeks to avoid.

## II. Additional discovery pursuant to Rule 56(d)

In connection with its opposition to Better Angels's motion for partial summary judgment, IAV has filed a declaration pursuant to Rule 56(d), Fed. R. Civ. P. Rule 56(d) provides that where a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; [or] (2) allow time to . . . take discovery." Fed. R. Civ. P. 56(d). That declaration must detail,

> (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

Miller v. Wolpoff & Abramson, LLP, 321 F.3d 292, 303 (2d Cir. 2003) (citation omitted). "A party seeking to delay resolution

of a summary judgment motion on the grounds that [it] has been deprived of certain discovery materials must show that the material sought is germane to the defense." Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016) (citation omitted). A court is free to reject a non-movant's Rule 56(d) request if it is based "only on speculation as to what potentially could be discovered." In re Dana Corp., 574 F.3d 129, 149 (2d Cir. 2009) (citation omitted). "[A] bare assertion that the evidence supporting [the non-movant]'s allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment." Id.

IAV's application for discovery pursuant to Rule 56(d) is denied. IAV seeks discovery on issues that are not material to Better Angels's trademark infringement claim.

IAV seeks discovery principally on (1) the instances of actual confusion cited by Better Angels; (2) Better Angels's donor base; and (3) the extent of Better Angels's involvement in programming that, indisputably, Better Angels funds and promotes with the Better Angels Mark, including but not limited to UNUM.

IAV has not shown how additional discovery on these issues would create a genuine issue of fact that is material to Better Angels's claim for trademark infringement. Instances of actual confusion cited by Better Angels have not contributed to the conclusion that Better Angels is entitled to summary judgment.

Details of Better Angels's donor base may be relevant to the consumer sophistication factor of the <u>Polaroid</u> test. This factor has been weighed against Better Angels's trademark infringement claim in the analysis undertaken above. Thus, any issues of fact that speak to actual confusion or consumer sophistication are not material to Better Angels's award of summary judgment.

In addition, the extent of Better Angels's involvement in the logistical or editorial decision-making of the programming that it funds and promotes with its Mark is not material to Better Angels's claim. IAV has provided no reason to think that the specifics of Better Angels's involvement in various programming has any bearing on consumer perception that Better Angels has funded these events and is associated with them.

## Conclusion

Better Angels's June 18, 2019 motion for partial summary judgment as to IAV's liability for trademark infringement is granted.

Dated:    New York, New York
          November 15, 2019

                              _____
                              DENISE COTE
                        United States District Judge

25